UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DANTE DELORETO, | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| v. | : | 3-00-CV-1011 (JCH) |
| | : | |
| SEBASTIAN SPADA, et al., | : | |
| Defendants. | : | AUGUST 30, 2004 |

**RULING:  RE DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT [DKT. NO. 59]**

Plaintiff Dante DeLoreto ("DeLoreto") brings this action, pursuant to 28 U.S.C. § 1983 and 1988, against two members of the New Britain Police Department ("NBPD"), Sebastian Spada and Gary Chute ("Defendants").  DeLoreto states claims under the First, Fourth, and Fourteenth Amendments, as well as claims state law, based upon his arrest on April 29, 1999, and his subsequent prosecution in Connecticut Superior Court.  The Defendants have moved for summary judgment [Dkt. No. 59].  For the reasons that follow, the court grants the Defendants' motion for summary judgment as to the federal claims as well as the malicious prosecution and false arrest claims and declines to exercise jurisdiction over the remaining state law claims.

**I.      PROCEDURAL HISTORY**

DeLoreto originally filed this action on June 5, 2000 [Dkt. No. 2]. On August 1, 2001, he amended his complaint [Dkt. No. 12].  On June 25, 2001, this court ordered a stay to await the outcome of the state criminal proceedings upon which DeLoreto based his claim of malicious prosecution.  After nearly a year, the criminal proceedings had still not been set for trial.  Therefore, on June 11, 2002, this court, sua sponte,

1

dismissed the action without prejudice to reopen after the resolution of the state proceeding [Dkt. No. 39].

On October 29, 2003, DeLoreto moved to reopen the case on the grounds that the criminal proceedings against him in state court had been resolved. Specifically, he plead that the state charges had been adjudicated nolle prosequi. This court reopened the case on December 30, 2003 [Dkt. No. 50]. On February 9, 2004, the Defendants filed the motion for summary judgment which is currently pending before the court [Dkt. No. 59]. On March 11, 2004, the court issued notice to DeLoreto of the pendency of the Motion for Summary Judgment [Dkt. No. 71]. On March 22, 2004, DeLoreto filed his opposition [Dkt. No. 85].

## II.    FACTS[1]

On April 29, 1999, at about 10:00 A.M., DeLoreto was driving his pickup truck south on Wethersfield Avenue in Hartford, Connecticut. The Defendants, dressed in plain clothes, were also driving south down Wethersfield Avenue in an unmarked police car with tinted windows. DeLoreto passed them at a high rate of speed in the right hand lane and gestured at them. The Defendants did not pursue DeLoreto at this point. However, subsequently, the Defendants were stopped at red traffic signal next to DeLoreto. DeLoreta resumed gesturing to them and appeared upset.

When the light turned green, DeLoretta took off at a high rate of speed and made a sudden lane change so as to cut off the Defendants, causing them to make an

---

[1]These facts are not in dispute or are construed in favor of DeLoreto.

abrupt stop.  The Defendants ran the vehicle's license plate numbers through their computer and began to follow DeLoreto.  They observed him make at least three unsafe lane changes, speed, cut off two other vehicles, and finally turn off of Wethersfield Avenue.  They followed DeLoreto through some side streets where he began to speed up and then slow down, all while gesturing at the Defendants.  At some point, DeLoreto stopped in the middle of the road, stuck his head out of back window of his pickup and yelled, "What the fuck is your problem?"  He then continued driving.

The Defendants pulled DeLoreto over to the side of the road at the corner of Wethersfield Avenue and Victoria Road in Hartford.  Both Defendants approached DeLoreto's vehicle and identified themselves as New Britain Police Officers and asked to see his driver's license, registration, and insurance paperwork.  DeLoreto complied and defendants asked him to stay in his car until they returned.

At some point DeLoreto became belligerent and got out of his car.  He stated, among other things, that the Defendants would pay for this and that he would have the matter "taken care of."  The Defendants drew their weapons and directed DeLoreto to get on the ground.  At this point, the Defendants again identified themselves as New Britain Police Officers.  They searched DeLoreto and his vehicle and detained him there, at the side of the road, until Wethersfield Police Officers arrived on the scene and arrested DeLoreto.

The state court criminal case proceeded in Superior Court in Bristol.  This case followed, in which DeLoreto complains that he was subjected to an unlawful search and

seizure, malicious prosecution, a violation of due process, and intentional infliction of emotional distress.  The state criminal case was eventually adjudicated nolle prosequi.

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c)); Hermes Int'l v. Lederer de Paris Fifth Ave, Inc., 219 F.3d 104, 107 (2d Cir. 2000).  The moving party bears the burden of showing that no genuine factual dispute exists.  Carlton v. Mystic Transp., Inc., 202 F.3d 129, 133 (2d Cir. 2000) (citing Gallo v. Prudential Residential Servs., Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994)).  In assessing the record to determine if such issues exist, all ambiguities must be resolved, and all inferences drawn, in favor of the party against whom summary judgment is sought.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Heilweil v. Mount Sinai Hosp., 32 F.3d 718, 721 (2d Cir.1994).  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  Anderson, 477 U.S. at 255.  When reasonable persons applying the proper legal standards could differ in their responses to the questions raised on the basis of the evidence presented, the question is best left to the jury.  Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000).

Once the moving party has met its burden, in order to defeat the motion the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial," Anderson, 477 U.S. at 255, and present such evidence as would allow a jury to

find in his favor, Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). A party may not rely "on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Lipton v. The Nature Company, 71 F.3d 464, 469 (2d Cir. 1995) (quoting Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 12 (2d Cir. 1986)). Additionally, a party may not rest on the "mere allegations or denials" contained in his pleadings. Goenaga v. March of Dimes Birth Defects Found., 51 F.3d 14, 18 (2d Cir. 1995); see also Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993) (holding that party may not rely on conclusory statements or an argument that the affidavits in support of the motion for summary judgment are not credible).

IV. **DISCUSSION**

   A. **State Law Malicious Prosecution Claim**

The Defendants move for summary judgment with respect to DeLoreto's malicious prosecution claim on the ground that the entry of a nolle defeats such a claim. The court agrees and grants summary judgment on this claim.

In order to sustain a cause of action for malicious prosecution, a plaintiff must show that the proceeding was terminated in his favor. See Singleton v. City of New York, 632 F.2d 185, 194-95 (2d Cir. 1980). This "favorable termination" of the criminal proceedings is an essential element of the malicious prosecution claim. See Pinaud v. County of Suffolk, 52 F.3d 1139, 1154 (2d Cir. 1995); Roesch v. Otarola, 980 F.2d 850 (2d Cir. 1992). "Proceedings are terminated in the accused's favor only when their final disposition is such as to indicate that the accused is not guilty." Konon v. Fornal, 612 F.

Supp. 68, 70 (D. Conn. 1985).

A nolle prosequi is not a favorable termination of the type required to support a malicious prosecution claim. See Birdsall v. City of Hartford, 249 F. Supp. 2d 163, 171 (D. Conn. 2003). Instead, Connecticut case law explicitly defines a nolle as "a unilateral act by a prosecutor, which ends the 'pending proceedings without an acquittal and without placing the defendant in jeopardy,'" in contrast to a dismissal, which "is an act of court." Cislo v. City of Shelton, 240 Conn. 590, 599 n.9 (1997) (quoting State v. Lloyd, 185 Conn. 199, 201 (1981)). A nolle requires no findings of fact to determine the accuracy of the charges. Lloyd, 185 Conn. at 201. When a nolle is entered, the criminal defendant has the right to object to the nolle and to demand a trial or dismissal. See Conn. Gen. Stat. § 54-56b. At least with respect to malicious prosecution claims, "[a] person who thinks there is not even probable cause to believe he committed the crime with which he is charged must pursue the criminal case to an acquittal or an unqualified dismissal, or else waive his section 1983 claim." Roesch, 980 F.2d at 853.

The nolle as applied to the malicious prosecution charge in this case is analogous to New York's "Adjudication in Contemplation of Dismissal," which the Second Circuit does not deem to be a termination in the accused's favor. See Singleton, 632 F.2d at 193-94. The New York adjudication considered in Singleton begins as an "adjournment of the action without date ordered with a view to ultimate dismissal of the accusatory instrument in furtherance of justice." Id. at 188 n.1 (quoting N.Y. Crim. Proc. Law. § 170.55). Within the next six months after the adjournment,

6

"upon application of the people . . . the court must restore the case to the calendar and the action must thereupon proceed." Id. If the action is not restored within six months, the action is deemed "dismissed within the interests of justice." Id. "A nolle, like 'an adjournment in contemplation of dismissal,... involves the consent of both the prosecution and the accused and leaves open the question of the accused's guilt.'" Birdsall, 249 F. Supp. 2d at 171 (quoting Singleton, 632 F.2d at 193). Therefore, the court grants summary judgment in favor of the Defendants with respect to DeLoreto's malicious prosecution claim.

### B. Fourth Amendment/False Arrest Claim

The defendants also move for summary judgment with respect to DeLoreto's false arrest claims. They argue that they never effected an arrest but rather, merely conducted a Terry stop, detaining DeLoreto until the Wethersfield Police arrived on the scene. However, assuming arguendo that an arrest did occur, the court finds that the false arrest claim is defeated by the entry of a nolle in the underlying criminal case.

It is well established that "[a] § 1983 claim of false arrest based on the Fourth Amendment right to be free from unreasonable seizures may not be maintained if there was probable cause for the arrest." Kent v. Kent, 312 F.3d 568, 573 (2d Cir. 2002); Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996); Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."). Thus, a finding of probable cause is a complete defense to an action for false arrest. See, e.g., Bernard v. United States,

7

25 F.3d 98, 102 (2d Cir. 1994). A plaintiff cannot challenge the existence of probable cause where the underlying criminal proceeding was not terminated in his favor. See Roesch, 980 F.2d at 853-54. The Second Circuit reasoned as follows:

> Having decided that the criminal charge at issue in the state court was not disposed of in a manner favorable to the [appellant], thereby precluding the [appellant] from pressing his malicious prosecution claim in this section 1983 action, it would be anomalous to allow the [appellant] to challenge here the existence of probable cause for his arrest and incarceration for that same criminal charge.

Id. at 853 (quoting Konon, 612 F. Supp at 71).

In the instant case, as noted above, since DeLoreto cannot establish that the underlying criminal matter was resolved in his favor, he cannot challenge the existence of probable cause. Therefore, the court grants summary judgment in favor of the Defendants with respect to DeLoreto's Fourth Amendment/false arrest claim.

### C. Fourth Amendment Illegal Search Claim

As to DeLoreto's claim that the Defendants conducted an illegal search of his person and his car, the court grants summary judgment in favor of the Defendants. Having found that there was probable cause to arrest, the search would be justified as incident to that lawful arrest. See McCardle v. Haddad, 131 F.3d 43, 48 (2d Cir. 1997) (noting that a principle exception to the Fourth Amendment prohibition against unreasonable searches is a search incident to a lawful arrest); see also United States v. Robinson, 414 U.S. 218, 235 (1973) ("A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to that arrest requires no additional justification.").

Therefore, the court grants summary judgment in favor of the Defendants with respect to DeLoreto's illegal search claim.

### D.  Substantive Due Process

DeLoreto also argues that the Defendants violated his right to substantive due process secured by the Fourteenth Amendment. However, "[w]here a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" Albright v. Oliver, 510 U.S. 266, 273 (1994) (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)). The Fourth Amendment, as an explicit textual source of constitutional protection, covers criminal investigations, arrests, and prosecutions. Poe v. Leonard, 282 F.3d 123, 136 (2d Cir. 2002). In the instant case, all of the complained of conduct occurred during the course of a criminal investigation and, therefore, precludes a claim under the Fourteenth Amendment. Therefore, the court grants summary judgment in favor of the Defendants with respect to DeLoreto's substantive due process claim claim.

### E.  Remaining State Law Claims

DeLoreto has also alleged additional claims under state law, violation of Conn. Gen. Stat § 54-1f and intentional infliction of emotional distress. Under 28 U.S.C. § 1367(c)(3), "[t]he district courts may decline to exercise supplemental jurisdiction over a [state law] claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). While dismissal of the state claims is not

mandatory, Rosado v. Wyman, 397 U.S. 397, 403-05 (1970); Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988), the basis for retaining jurisdiction is weak when the federal claims are dismissed before trial.  United Mine Workers v. Gibbs, 38 U.S. 715, 726 (1966).  Accordingly, the court declines to exercise jurisdiction over the state law claims, and those claims are dismissed without prejudice.

**V.    CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment [Dkt. No. 59] is **GRANTED** is granted as to the all federal claims as well as the false arrest and malicious prosecution claims.  The court declines to exercise jurisdiction over the remaining state law claims and, therefore, dismisses them without prejudice.  The clerk is directed to close this file.

**SO ORDERED.**

Dated this 30th day of August, 2004 at Bridgeport, Connecticut.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge